EXHIBIT B

Certified Arbitration Award

American Arbitration Association



**AMERICAN   INTERNATIONAL CENTRE**
**ARBITRATION   FOR DISPUTE RESOLUTION**
**ASSOCIATION**

## AMERICAN ARBITRATION ASSOCIATION

October 21, 2021

In the Matter of the Arbitration Between:

Case Number: 01-20-0005-1630

Balanced Bridge Funding LLC fka
Thrivest Specialty Funding LLC
-vs-
Mitnick Law Office, LLC

### CERTIFICATION

State of Georgia

     SS:

County of DeKalb

John Bishop, being duly sworn deposed and says:

1. He is the Vice President of the Southeast Case Management Center of the American Arbitration Association, Inc. (hereinafter referred to as the AAA), a not-for-profit corporation organized under the Laws of the State of New York, having its principal offices at 120 Broadway, 21st Floor, New York, NY 10271.

2. In such capacity, he is in general charge of all arbitrations conducted pursuant to the rules of the AAA in its Southeast Case Management Center.

3. He has reviewed the AAA's file pertaining to the above-captioned arbitration administered by the AAA as case #01-20-0005-1630.

4. He hereby certifies that the attached FINAL AWARD is a true and exact copy of the same document contained in said case #01-20-0005-1630.

5. He hereby certifies that the subject arbitration was governed by the Commercial Arbitration Rules of the AAA, as amended and in effect October 1, 2013.

DATED:  10/21/2021     _____
                Signature

On this 21st day of October, 2021 before me personally came and appeared John Bishop to me known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

DATED:  10/21/2021     Molly J Brown
                Notary Public

                November
                My Commission Expires

                    Molly J Brown
                    NOTARY PUBLIC
                  Gwinnett County, GEORGIA
                My Commission Expires 11/08/2024

Case No.  01-20-0005-1630
FINAL AWARD

## Commercial Arbitration under AAA Commercial Rules and Mediation Procedures
### Amended and effective October 1, 2013

Balanced Bridge Funding LLC fka Thrivest
Specialty Funding LLC

    Claimant

vs.

Mitnick Law Office, LLC

    Respondent

Case No. 01-20-0005-1630

**FINAL AWARD**

| | |
|---|---|
| **Claimant's Counsel** | Eric C. Reed, Esquire |
| **Respondent's Counsel** | Craig Mitnick, Esquire |
| **AAA Director:** | Matthew Conger, Esquire |
| **Arbitrator:** | Hon. Francis J. Orlando, Jr., A.J.S.C. *(Retired)* |

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the

Arbitration Agreement entered into between the above-named parties and dated June 2, 2017 and

having been duly sworn and having duly heard the proofs and allegations of the Parties, and

having previously rendered an interim award dated August 17, 2021, do hereby find and

AWARD as follows:

1.  The Opinion and Order dated May 27, 2021 granting summary judgment in favor
of Balanced Bridge and against Mitnick Law on liability issues is hereby
incorporated into this Final Award.

2.  The Interim Award and Opinion dated August 17, 2021 is hereby incorporated
into this Final Award.

Case No.  01-20-0005-1630
FINAL AWARD

## AWARD

1.   Claimant, Balanced Bridge Funding LLC is awarded $2,307,119.00 as of July 31, 2021 against the Respondent, Mitnick Law Office, LLC.

2.   This Award shall bear interest at the contracted rate of 19 percent per annum, accruing daily and compounded monthly until the Award is satisfied.

3.   The Claimant, Balanced Bridge is awarded $102,605.01 in reasonable attorney's fees and costs.

4.   The administrative fees and expenses of the American Arbitration Association totaling $16,175.00 shall be borne $16,175.00 by Mitnick Law Office, LLC, and the compensation and expenses of the arbitrator(s) totaling $28,782.00 shall be borne $28,782.00 by Mitnick Law Office, LLC. Therefore, Mitnick Law Office, LLC has to pay Balanced Bridge Funding LLC fka, an amount of $44,957.00 representing that portion of fees and expenses incurred by the Claimant.

5.   This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.  All claims and counterclaims not expressly granted in this Award are denied.

Dated: September 1, 2021

Francis J. Orlando, Jr., Arbitrator

I, Francis J. Orlando, so hereby affirm upon my oath as an Arbitrator, that I am the individual described herein and who executed this instrument, which is the FINAL AWARD.

Dated: September 1, 2021

01-20-0005-1630
6075794-1

2

Case No.  **01-20-0005-1630**
**FINAL AWARD**

Francis J. Orlando, Jr., Arbitrator

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Balanced Bridge Funding LLC f/k/a Thrivest Specialty Funding LLC | Case No. 01-20-0005-1630 |
| Claimant | |
| vs. | **INTERIM AWARD AND OPINION** |
| Mitnick Law Office, LLC | |
| Respondent | |

| | |
|---|---|
| **Claimant's Counsel** | Eric C. Reed, Esquire |
| **Respondent's Counsel** | Craig Mitnick, Esquire |
| **AAA Director:** | Matthew Conger, Esquire |
| **Arbitrator:** | Hon. Francis J. Orlando, Jr., A.J.S.C. *(Retired)* |

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration Agreement dated June 2, 2017 entered into by the above-named parties, and having been duly sworn and having duly heard proofs and allegations of the parties, hereby render this Interim Award, as follows:

Craig Mitnick, Esquire ("Mitnick") is an attorney and the principal of Mitnick Law Office, LLC ("Mitnick Law"). Mitnick Law represents over 1,250 former professional football players in the National Football League Concussion Class Action Litigation ("NFL Litigation"). In September 2015, Mitnick Law began selling its rights to attorney's fees earned in NFL Litigation to Balanced Bride Funding LLC f/k/a Thrivest Specialty Funding ("Balanced"), a litigation funding company, in return for cash advances. Mitnick Law and Balanced entered into a nine successive agreements. Balanced filed this arbitration claim contending that Mitnick Law

breached the agreements by failing to pay over legal fees received in the litigation and refusing to update Balanced on the status of the litigation. Mitnick challenged the validity of the Agreements and sought dismissal of Balanced claims.

The parties cross moved for Summary Judgment on the issue of liability. I considered the parties' submissions, legal precedent and oral argument. I issued a decision dated May 27, 2021 in which I determined that the Agreements between Balanced and Mitnick Law are valid and that Mitnick Law has admitted breach. I therefore granted Balanced's application for Summary Judgment as to liability and denied Mitnick Law's motion to dismiss the claim. I adopt my opinion and make it part of this decision as if fully set forth herein.

A damage hearing was held on June 21, 2021 and June 23, 2021. The parties presented exhibits and witness testimony. Mr. Joseph Genovesi, the CEO and owner of Balanced testified for the Claimant and Craig Mitnick, Esquire testified for the Respondent. Thereafter, the parties submitted Post-Hearing Briefs and the Respondent submitted a transcript of the hearing.

There are a number of issues to be resolved including the amount of fees Mitnick Law received, the interest rate to be charged and how it is to be applied and the Claimant's request for counsel fees and costs. However, a threshold issue to be addressed and resolved is Mitnick Law's multiple requests to have the agreements declared unenforceable and/or have the case dismissed without counsel fees or costs.

2

## MITNICK LAW'S APPLICATION TO HAVE THE AGREEMENTS DECLARED UNENFORCEABLE AND/OR TO HAVE THE CLAIM DISMISSED

Although I upheld the validity of the Agreements granting Balanced's application for judgment as to liability and denying Mitnick Law's request for dismissal, Mitnick Law now asserts that based on Genovesi's testimony the agreements should be declared unenforceable. Mitnick Law argues that because Genovesi made a mistake as to the interest rate to be charged and was unsure as to the terms of certain of the Agreements between the parties demonstrates that the Agreements are ambiguous and should not be enforced. Genovesi initially testified that the interest rate being charged was 17%. However, during his testimony on June 23, 2021, he testified he made an error during his testimony on June 21, 2021 and became "confused with the different interest rate numbers that were in front of me" (T. Genovesi, p.7). He clarified that the interest rate is 19 percent not 17 and that "there was a change made between the second and third agreements that went from 18 to 19 percent, its compounded monthly and it stayed that way until now" (T. Genovesi, p.8). Thus, Mr. Genovesi acknowledged his original answer was an error and clarified what he contends is the interest rate agreed to by the parties. Indeed, Mr. Mitnick acknowledged that he had a conversation with Mr. Genovesi regarding the 19% interest shortly after he signed the Rider to the Master Non-Recourse Purchase and Sale Agreement on June 5, 2017. The Rider contains the following statement:

> "Scheduled Payments: (Purchase Price plus an annual investment return of 21% accruing daily and compounded monthly."

Mr. Mitnick testified at page 67 as follows:

> "My testimony. 21 percent, when I came across that I contacted Mr. Genovesi and I was told that is an error. It should have been 19 percent at which point the discussion started with, what percent? But that was initially supposed to have been changed".

3

Thus, Mr. Mitnick signed a Rider which stated the interest rate was to be 21%. Thereafter, he spoke to Mr. Genovesi who advised him that the interest rate should be 19% not 21%.

The fact that Mr. Genovesi made an initial error as to the interest rate during his testimony which he later clarified and was uncertain as to certain facts regarding prior agreements does not render the agreements unenforceable. This is particularly true where Mr. Mitnick signed a Rider agreeing to the even higher rate of 21% and thereafter had a conversation with Mr. Genovesi who stated the rate was 19%.

Thus, Mitnick Law's effort to have the agreements declared unenforceable fails.

Next, Mitnick Law asserts that the claim must be dismissed because Balanced filed a Reply Post-Hearing brief. The timeline for post-hearing submissions was as follows:

- I initially established July 9, 2021 as the deadline for submitting post-hearing Briefs on the substantive issues.

- On July 7, 2021, Respondent requested a 10-day adjournment to have a court reporter transcribe the Zoom hearing.

- On July 7, 2021, Claimant objected noting the parties agreed to a Zoom hearing and the AAA Procedures for Virtual Hearing.

- On July 8, 2021, I granted the Respondent's request. I then established the following deadlines:

    o Substantive Briefs due from both parties on July 19, 2021.

    o Claimant's counsel to submit his fee request by July 12, 2021.

    o Respondent to submit both its substantive brief and any objection to the Claimant's counsel's fee request on July 19, 2021.

- On July 22, 2021, the AAA Director advised the parties that hearings are declared closed as of July 20, 2021 and that direct exchange with the Arbitrator is terminated.

4

- Claimant's counsel submitted its fee application on July 12, 2021.

- Both parties submitted Post-Hearing Briefs on the substantive issue on July 19, 2021.

- Respondent did not file an objection to Claimant's counsel's request for an award for fees and costs on July 19, 2021.

- Respondent on Friday July 23, 2021 at 4:10 submitted its opposition to Claimant's fee application directly to the Arbitrator despite the fact that direct exchange was terminated.

- On July 27, 2021, I was advised by the American Arbitration Association's Director that on July 26, 2021, the Claimant filed a reply to Respondent's post-hearing submission regarding damages and that the Respondent filed an objection.

- I ruled that in light of Respondent's own late filing of its objection to the Request for Counsel Fees, I would accept Claimant's submission and afford the Respondent the opportunity to file a Reply Brief on the issue of damages.

- On July 30, 2021, the Respondent forwarded to me through the American Arbitration Association an objection to allowing the Claimant to submit its Reply Brief contending that there is no remedy or cure for the prejudice it has suffered.

- On August 2, 2021, the Respondent submitted its Post-Hearing Reply Brief.

The Respondent contends that "Claimant's counsel stained the record with his deliberate, unethical and malicious action. There is no cure for this action; the sanctions of dismissal without costs and fees is the only remedy" (Mitnick e-mail July 26, 2021).

Although Mitnick Law claims incurable prejudice it woefully fails to demonstrate any such prejudice. Claimant's Reply Brief consists of less than 3 full pages of double-spaced type. It contains no new evidence. The Reply advances much the same arguments Balanced had already made in prior submissions. The Respondent was given the opportunity to submit a Reply, which

5

it did do.  Arguably the Respondent had the superior advantage because it was able to respond to the Claimant's Post-Hearing submission and the Claimant's Reply.

Respondent's request for dismissal of the claim is denied as it has failed to demonstrate any significant prejudice.

## FEES RECEIVED BY MITNICK LAW

A critical issue to be determined through the damage hearing is the amount of fees received by Mitnick Law in the NFL Litigation.  The parties stipulated Balanced advanced Mitnick Law $2,208,194.06, that Mitnick Law has repaid Balanced $1,869,727.00 and thus there is a balance of $338,466.00 due on principal alone to Balanced.  The payments from Mitnick Law to Balanced were made on the following dates:

| | |
|---|---|
| 07-31-18 | $673,959.38 |
| 08-17-18 | $558,166.00 |
| 08-30-18 | $400,000.00 |
| 09-17-18 | $90,766.34 |
| 09-24-18 | $790.17 |
| 12-27-18 | $55,546.00 |
| 03-18-19 | $90,500.00 |

Mitnick Law receives fees in the NFL Litigation from three sources (1) Common Benefit Fee; (2) Referral Fees from Locks Law Firm; and (3) Fees received by Mitnick Law for the players the firm represents directly whose cases have been resolved.  The parties stipulated that Mitnick Law received a Common Benefit Fee of $673,959.00.  The parties also stipulated that Mitnick Law received a total of $1,940,369.00 in referral fees from Locks Law Firm.  The fees received from Locks Law were forwarded to Mitnick Law as follows:

6

| 2018 | $1,391,728.00 |
|------|---------------|
| 2019 | $331,041.00 |
| 2020 | $118,300.00 |
| 2021 | $99,300.00 |

The amount of fees Mitnick Law received from the players it directly represents is in dispute.

Balanced asserts Mitnick Law has received $1,870,610.00 in fees for the players it directly represents. Balanced reaches this result by applying a 17% fee (the maximum counsel fee permitted by the federal court) on all amounts set forth on IRS Form 1099 from the NFL Settlement Administrator to the Mitnick Law firm for each year in question. This is a gross overreach. There is no evidence in the record that demonstrates Mitnick Law ever received 17% on any case let alone on all its cases. Indeed, for a period of time, NFL/Settlement Administrator was sending legal fees directly to law firms representing players. The NFL/Administrator issued to Mitnick Law a Settlement Payment Funding Report for two of its cases – Bruney and Satterfield. The report reflects that Mitnick law received an approximate 5% fee in the Bruney matter and an approximate 10% fee in the Satterfield case. This documentary evidence from the NFL undercuts Balanced unsupported claim that Mitnick Law received a 17% fee on all its cases.

Balanced alternate assertion is that Mitnick Law received $1,132,359.00 in fees for the players it directly represents. This contention is arrived at by assessing 10% on all amounts on the IRS Form 1099's issued by the Settlement Administrator. This is also an overreach. While Mitnick Law received a 10% fee on some of its cases on others it received a 5% fee and in at least one case the fee had to be shared with other counsel.

7

I find as credible the testimony of Mr. Mitnick regarding the fees received by Mitnick Law as a result of the settlement of claims for the players directly represented by the firm. I determine that Mitnick received a total of $734,560.44 in fees as a result of this direct representation. I have disregarded the Claimant's assertion that Mitnick Law received an additional $121,145.70 in fees which Mr. Mitnick did not identify during his testimony. The Claimant makes this contention based on certain checks which it identifies in its Post-Hearing Brief. The checks were not presented as evidence during the hearing nor was Mr. Mitnick presented with the checks during his testimony and afforded an opportunity to address and/or explain the checks. I therefore regard these checks as unreliable to support the contention that Mitnick Law received an additional $121,145.70 in fees. I did accept Mitnick Law's revision of the fees it received as set forth in the firm's Post-Hearing Brief because this revision increased the fees received by Mitnick Law.

I find that Mitnick Law received the following direct fees:

| Year | Client | Amount |
|------|--------|--------|
| 2018 | King | $39,255.68 |
| 2018 | Kubala | $71,949.92 |
| 2018 | LeClair | $90,229.90 |
| 2018 | Bruney | $11,172.45 |
| 2018 | Wirgowski | $42,224.60 |
| 2018 | Downing | $20,026.14 |
| 2018 | Satterfield | $101,540.54 |
| 2018 | Bierne | $91,129.26 |
| | | $467,528.49 |

8

| Year | Client | Amount |
|------|--------|-------:|
| 2019 | Womble | $4,940.47 |
| 2019 | Irvin | $90,638.16 |
| 2019 | A. Clark | $71,127.26 |
| 2019 | Hampton | $46,815.35 |
| | | $213,521.24 |

| Year | Client | Amount |
|------|--------|-------:|
| 2020 | B. Clark | $34,793.00 |
| 2020 | Parish | $7,194.40 |
| 2020 | Randle | $11,523.31 |
| | | $53,510.71 |

Total fees received directly by Mitnick Law for players it directly represents:

| Year | Amount |
|------|-------:|
| 2018 | $467,528.49 |
| 2019 | $213,521.24 |
| 2020 | $53,510.71 |
| TOTAL | $734,560.44 |

## INTEREST RATE

Mitnick Law asserts that the applicable interest rate to be applied to the amounts owed by Respondent should be 6 percent or no greater than 18% simple interest. This argument is rejected. The Master Non-Recourse Purchase and Sale Agreement dated June 2, 2017 contains the following Rider:

9

RIDER

### RIDER TO MASTER NON- RECOURSE PURCHASE AND SALE AGREEMENT
DATED June 2, 2017
(ATTORNEYS' FEES)

Rider dated as of June 2, 2017 to that certain Master Non-Recourse Purchase and Sale Agreement dated as of June 2, 2017 between Mitnick Law Office, LLC and Thrivest Specialty Funding, LLC (the "Master Agreement")

Reference is hereby made to that certain Master Agreement between Mitnick Law Office, LLC (the "Seller") and Thrivest Specialty Funding, LLC (the "Purchaser") and dated as of June 2, 2017. All capitalized terms not otherwise defined in this Rider shall have the same meanings as ascribed to them in the Master Agreement. All terms and conditions of the Master Agreement are hereby incorporated herein by reference as if they were fully set forth in this Rider.

1. Seller hereby acknowledges and understands and agrees that it shall be subject to all of the terms and conditions as set forth in the Master Agreement including but not limited to Seller's agreement to pay the Scheduled Payments (described on Exhibit B hereto) to the Purchaser. Moreover, Seller agrees that as a condition to the Purchaser paying the Purchase Price to the Seller, Seller must obtain the signature of the Obligor on the Irrevocable Authorization, Agreement and Acknowledge to Pay, the form of which is attached hereto as Exhibit A.

2. Seller agrees that Purchaser may withhold from the Purchase Price the amount of $1,939,273.70 to repay the Purchase and Sale Agreement #7 with TSF dated April 5, 2017.

3. Seller agrees that Purchaser may deduct the Transaction Fees in the amount set forth below in this Rider from the Purchase Price.

**Description of Legal Fees:** United States District Court for the Eastern District of Pennsylvania - In RE: National Football League Player's Concussion Injury Litigation; Docket No: 2:12-md-02323-AB; MDL No. 2323; Civ. Action No.:14-cv-00029-AB.

**Scheduled Payments** (*Purchase Price plus an annual investment return of 21% accruing daily and compounded monthly*): See Exhibit B attached hereto and made a part hereof.

| | |
|---|---|
| **Purchase Price:** | $2,189,273.70 |
| **Transaction Fees:** | $   7,500.00 |
| **Amounts Withheld:** | $1,939,273.70 |
| **Net to Attorney:** | $  242,500.00 |

12

10

Case No.  01-20-0005-1630
**INTERIM AWARD AND OPINION**

Seller and Purchaser hereby agree to terms of this Rider and agree to the incorporation by
reference of the terms and conditions in the Master Agreement.

Date: 6/5/17

SELLER: MITNICK LAW OFFICE, LLC

By:

MITNICK LAW OFFICE, LLC.

PURCHASER: THRIVEST SPECIALTY FUNDING, LLC

By:

13

11

The Rider identifies the annual investment return of 21% accruing daily and compounded monthly. This document was signed by Mr. Mitnick at the top of the very next page. As I have already noted Mr. Mitnick testified that when he reviewed the Rider and noticed the 21% interest rate he contacted Mr. Genovesi who advised him the 21% rate was incorrect and it is 19%. Thus, Mr. Mitnick was aware the true interest rate was 19%. Furthermore, the Master Non-Recourse Purchase and Sale Agreement includes Rider No. 2 which states:

(See next page)

6056200-1

RIDER No. 2

### RIDER No. 2 TO MASTER NON- RECOURSE PURCHASE AND SALE AGREEMENT
### DATED APRIL 23, 2018
### (ATTORNEYS' FEES)

Rider No. 2 dated as of April 23, 2018 to that certain Master Non-Recourse Purchase and Sale Agreement dated as of June 2, 2017 between Mitnick Law Office, LLC and Thrivest Specialty Funding, LLC (the "Master Agreement")

Reference is hereby made to that certain Master Agreement between Mitnick Law Office, LLC (the "Seller") and Thrivest Specialty Funding, LLC (the "Purchaser") and dated as of June 2, 2017. All capitalized terms not otherwise defined in this Rider No. 2 shall have the same meanings as ascribed to them in the Master Agreement. All terms and conditions of the Master Agreement are hereby incorporated herein by reference as if they were fully set forth in this Rider No. 2.

Reference is hereby made to that certain Rider dated June 2, 2017 ("Prior Rider"), whereby the Purchaser advanced the sum of $2,189,873.70 to the Seller. The amounts advanced to the Seller under this Rider are in addition to those amounts advanced in the Prior Rider.

1. Seller hereby acknowledges and understands and agrees that it shall be subject to all of the terms and conditions as set forth in the Master Agreement including but not limited to Seller's agreement to pay the Scheduled Payments (described on Exhibit B hereto) to the Purchaser. Moreover, Seller agrees that as a condition to the Purchaser paying the Purchase Price to the Seller, Seller must obtain the signature of the Obligor on the Irrevocable Authorization, Agreement and Acknowledge to Pay, the form of which is attached hereto as Exhibit A.

2. Seller agrees that Purchaser may deduct the Transaction Fees in the amount set forth below in this Rider No. 2 from the Purchase Price.

**Description of Legal Fees:** United States District Court for the Eastern District of Pennsylvania - In RE: National Football League Player's Concussion Injury Litigation; Docket No. 2:12-md-02323-AB; MDL No. 2323; Civ. Action No. 14-cv-00029-AB.

**Scheduled Payments** (*Purchase Price plus an annual investment return of 18% accruing and compounded monthly*): See Exhibit B attached hereto and made a part hereof.

| | |
|---|---|
| **Purchase Price:** | $515,463.92 |
| **Transaction Fees:** | $ 15,463.92 |
| **Amounts Withheld:** | $ 0.00 |
| **Net to Attorney:** | $500,000.00 |

1

Seller and Purchaser hereby agree to terms of this Rider No. 2 and agree to the incorporation
by reference of the terms and conditions in the Master Agreement.

Date  04/05/2018

SELLER: MITNICK LAW OFFICE, LLC

By:

MATTHEW COWPERTHWAIT
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 11/18/2018

PURCHASER:  THRIVEST SPECIALTY FUNDING, LLC

By:

2

This Rider identifies the interest rate as 19% accruing and compounding monthly.  Mr.

Mitnick as with the first Rider signed the document at the top of the next page.

14

Finally, there is an Exhibit B – Schedule of Payments which states:

EXHIBIT B

Schedule of Payments

| | | | |
|---|---|---|---|
| June 30, 2017 | $2,223,937.20 | December 31, 2018 | $2,950,711.79 |
| July 31, 2017 | $2,259,149.54 | January 31, 2019 | $2,997,431.39 |
| August 31, 2017 | $2,294,919.41 | February 28, 2019 | $3,044,890.72 |
| September 30, 2017 | $2,331,255.63 | March 31, 2019 | $3,093,101.49 |
| October 31, 2017 | $2,368,167.18 | April 30, 2019 | $3,142,075.60 |
| November 30, 2017 | $2,405,663.16 | May 31, 2019 | $3,191,825.13 |
| December 31, 2017 | $2,443,752.83 | June 30, 2019 | $3,242,362.36 |
| January 31, 2018 | $2,482,445.58 | July 31, 2019 | $3,293,699.76 |
| February 28, 2018 | $2,521,750.97 | August 31, 2019 | $3,345,850.01 |
| March 31, 2018 | $2,561,678.69 | September 30, 2019 | $3,398,825.97 |
| April 30, 2018 | $2,602,238.60 | October 31, 2019 | $3,452,640.71 |
| May 31, 2018 | $2,643,440.71 | November 30, 2019 | $3,507,307.52 |
| June 30, 2018 | $2,685,295.19 | December 31, 2019 | $3,562,839.89 |
| July 31, 2018 | $2,727,812.37 | January 31, 2020 | $3,619,251.53 |
| August 31, 2018 | $2,771,002.73 | February 29, 2020 | $3,676,556.34 |
| September 30, 2018 | $2,814,876.94 | March 31, 2020 | $3,734,768.48 |
| October 31, 2018 | $2,859,445.82 | April 20, 2020 | $3,793,902.32 |
| November 30, 2018 | $2,904,720.38 | May 31, 2020 | $3,853,972.44 |

With my signature below, I acknowledge and understand if distribution of the Scheduled Payments has not been paid to TSF by the last date of the above Schedule of Payments, the Scheduled Payments will continue to accrue at the same rate as described in the Purchase and Sale Agreement until distribution occurs.

Mitnick Law Office, LLC

15

This document is signed by Mr. Mitnick.  Mr. Genovesi testified that the monthly increases

reflect the application of the 19% interest rate compounding monthly.

Thus, Mr. Mitnick signed multiple documents reflecting a 19% interest rate compounding monthly and by his own admission had a conversation with Mr. Genovesi in which Genovesi advised him the 21% rate was in error and should be 19%. Mr. Mitnick cannot now claim he did not know the interest rate or that the documents did not set forth the interest rate. The rate to be applied is 19% compounded monthly.

## ASSESSMENT OF DAMAGES

I have determined that there has been an underpayment by Mitnick Law to Balanced as follows:

| Year | Amount |
|------|-------------|
| 2018 | $753,987.00 |
| 2019 | $454,062.00 |
| 2020 | $171,756.00 |
| 2021 | $99,300.00 |

I have arrived at this decision based upon the parties Stipulations and my analysis of the fees directly received by Mitnick Law. My calculations are set forth in Exhibit A attached to this Opinion.

I have already decided that the interest to be charged, based upon the parties' agreements, is 19% compounded monthly. This interest rate is to be assessed on the amounts which were underpaid by Mitnick Law. I agree with the methodology employed by the Claimant. The Claimant presented these different scenarios. I have not adopted any of those proposals since I have determined that the fees received by Mitnick Law were less than the assessment by Balanced. I therefore direct Balanced to provide a calculation of the amounts owed to it based upon my

16

determination of the underpayments by Mitnick Law using the interest rate of 19% compounded monthly.  Mitnick Law will have 3 business days to comment on the calculation only and not on any other part of this Opinion.

## RESPONDENT CLAIM THAT ANY AWARD AGAINST IT CAN ONLY BE COLLECTED FROM NFL FEES

The Respondent asserts that because the agreements between it and the Claimant are non-recourse and relate only to fees the Respondent receives from NFL cases that any award against it can only be collected from NFL fees received by Mitnick Law.  I reject this contention.  The Respondent offers no legal support for the proposition that a breach of a non-recourse loan limits the creditor to only the asset that are the subject of the Non-Recourse loan.  Once a breach occurs the creditor is entitled to pursue any of the debtor's assets to make itself whole absent any provision in the agreement to the contrary.  Indeed, in this case if no more NFL fees were forthcoming, Balanced would be left without a remedy.  Balanced may pursue any of the assets of the Respondent it is legally entitled to pursue in order to obtain payment of any amount(s) it is awarded.

## CLAIMANTS REQUEST FOR COUNSEL FEES AND COSTS

The Claimant has requested an award for counsel fees and costs.  The Agreement between the parties provides at paragraph 9(a) that in the event of a breach the Purchaser (Balanced) is entitled to recover reasonable costs and attorney fees.  Mitnick Law breached the Agreement.  Balanced is a prevailing party.  Therefore, Claimant is entitled to reasonable costs and counsel fees.

I will award Balanced all American Arbitration Association fees and Arbitrator fees.

17

Balanced has requested a counsel fee award of $114,564.51. Although the fee application did not identify counsel's billing rate by my calculation it is $595.00 an hour. Mitnick Law challenges the rate as excessive. However, the amounts in dispute are in excess of one million dollars and the Claimant is entitled to have a sophisticated commercial litigator represent it in the litigation. I therefore approve the rate.

I have deducted 20.1 hours from the hours billed by counsel which consists of the following:

> 4.1 hours for work done before filing for Arbitration.
>
> 6.0 hours relating to preparing discovery request and deficiency notice as the amounts billed are in excess of reasonable time to complete the task.
>
> 10.0 hours related to preparation participation and submission related to the hearing. Much of the Claimant's presentation was predicated on its assertion that Mitnick Law had received 17% fees which contention is rejected.

I therefore award Claimant a counsel fee award of $102,605.01.

## CLAIMANT'S REQUEST FOR AN ORDER DIRECTING THIRD PARTIES TO PAY OVER FEES DUE MITNICK LAW TO IT

I deny Claimant's request for an Order directing Third Parties, including the Claims Administrator, to pay to Balanced any sums otherwise due Mitnick Law to satisfy any award in favor of Balanced as well as future obligations of Mitnick Law. Any award to Balanced will presumably be reduced to a Judgment. Balanced will then have the opportunity to pursue all remedies to which the law entitles it to secure payment. Moreover, the relief requested by Balanced is unworkable. The amounts forwarded by the Claim Administrator to Mitnick Law

18

combine client awards and counsel fees.  The Administrator does not separate the client award from the legal fee.  The Administrator does not know how much legal fee will be charged in any given case.  Mitnick Law has the legal and ethical obligation to disburse funds to its clients.  This task cannot be assigned to Balanced.  Moreover, Balanced in this case has significantly overstated the damage it claims to have suffered from Mitnick Law's breach and therefore cannot be relied upon to accurately assess and communicate to third parties the amounts due it from Mitnick Law.  Finally, I will not presume future breaches by Mitnick Law.  I will enter an award in a lump sum dollar amount for the amount due Balanced as of July 31, 2021 plus an award for counsel fees and costs.

Dated: August  17 , 2021

Francis J. Orlando, Jr., Arbitrator

19

6056200-1

EXHIBIT A

2018

Fees Received by Mitnick Law

| | |
|---|---|
| Locks Law | $1,391,728.00 |
| Common Benefit Fee | $673,959.00 |
| Direct Client Fee | $467,528.49 |
| | $2,533,215.49 |

Amounts Paid By Mitnick Law To Balanced   $1,779,228.00

SHORTFALL                                 $753,987.49

2019

Fees Received by Mitnick Law

| | |
|---|---|
| Locks Law | $331,041.00 |
| Direct Client Fee | $213,521.24 |
| | $544,562.24 |

Amounts Paid By Mitnick Law To Balanced   $90,500.00

SHORTFALL                                 $454,062.24

2020

Fees Received by Mitnick Law

| | |
|---|---|
| Locks Law | $118,300.00 |
| Direct Client Fee | $53,510.71 |
| | $171,810.71 |

Amounts Paid By Mitnick Law To Balanced   $0

SHORTFALL                                 $171,810.71

20

6056200-1

2021

Fees Received by Mitnick Law

| Locks Law | $99,300.00 |
|---|---|

Amounts Paid By Mitnick Law To Balanced        $0

    SHORTFALL        $99,300.00

21

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Balanced Bridge Funding LLC fka Thrivest Specialty Funding LLC | Case No. 01-20-0005-1630 |
| Claimant | |
| | **OPINION** |
| vs. | |
| Mitnick Law Office, LLC | |
| Respondent | |

| | |
|---|---|
| **Claimant's Counsel** | Eric C. Reed, Esquire |
| **Respondent's Counsel** | Craig R. Mitnick, Esquire |
| **AAA Director:** | Matthew Conger, Esquire |
| **Arbitrator:** | Hon. Francis J. Orlando, Jr., A.J.S.C. *(Retired)* |

Craig Mitnick, Esquire ("Mitnick") is an attorney and the principal of Mitnick Law Office, LLC ("Mitnick Law"). Mitnick Law represents over 1,250 former professional football players in the National Football League Concussion Class Action Litigation ("NFL Litigation"). In September 2015, Mitnick began selling its rights to attorney's fees earned in NFL Litigation to Balanced Bridge Funding LLC f/k/a Thrivest Specialty Funding ("Balanced"), a litigation funding company, in return for cash advances. Mitnick Law and Balanced entered into nine successive agreements. Balanced filed this arbitration claim contending that Mitnick Law breached the agreements by failing to pay over legal fees received in the litigation and refusing to update Balanced on the status of the litigation. Mitnick challenges the validity of the Agreements and seeks dismissal of Balanced claims. The parties have exchanged written discovery. Both parties have moved for Summary Judgment as to liability. Mitnick Law and Balanced each filed moving, opposition and supplemental Briefs and presented oral argument to the Arbitrator.

## BACKGROUND

Craig Mitnick is an experienced and accomplished civil and criminal litigator. Mitnick has personal and professional relationships with many retired NFL players throughout the United States. In December 2011, Mitnick learned about a possible class action lawsuit against the NFL for concussion related injuries suffered by players. Mitnick was retained by approximately 1,250 former players to represent them in the NFL Litigation. He was primary counsel for approximately 250 players and co-counsel with the Locks Law firm for another 1,000 players. Mitnick's efforts on behalf of the retired players received media coverage.

Joseph Genovesi ("Genovesi") is the CEO of Balanced. Genovesi contacted Mitnick in the summer of 2015 apparently to seek Mitnick's assistance in having Balanced provide case funding to players being represented by Mitnick in the NFL Litigation.

Mitnick contends that Genovesi proposed providing funding to Mitnick Law. According to Mitnick Genovesi "insisted that there was absolutely no risk to Mitnick's office as the transaction was "non-recourse." This meant that, if the Settlement did not materialize or the case did not pay out neither Mitnick nor his Office was liable to the Claimant" (Mitnick Certification paragraph 29).

Mitnick asserts that he had concerns about entering into an Agreement with a litigation funding company such as Balanced. However, it appears he never sought counsel or advice from an experienced transaction attorney.

Mitnick Law and Balanced executed the first agreement on or about September 24, 2015. The Agreement is titled "Assignment and Sale Agreement." The Agreement contains the following provisions.

2

5944343-1

WHEREAS, TSF is in the business of investing in settlement claims and lawsuits. This Sale Agreement specifically relates to TSF purchasing the right to receive a portion of the attorney contingency fees and attorney common benefit fees stemming from the final settlement of the matter of "In re NFL concussion litigation".

WHEREAS, Attorney/Seller confirms that he and/or his law firm is entitled to receive both legal fees from those individual cases for which he represents the interests of retired NFL players and where he is counsel and/or co-counsel, as well as common benefit fees approved/awarded by the court in regard to the class action matter;

WHEREAS, TSF wishes to purchase, and Attorney/Seller wishes to sell the right, title and interest in a portion of those legal fees already earned arising from the "NFL concussion class action" but not yet realized. This purchase is subject to the conditions set forth below;

WHEREAS, Attorney/Seller wishes to sell the right, title and interest in portion of his and/or his law firm's legal fees in the sum of Five Hundred Thousand dollars ($500,000.00) set forth in this Agreement (hereinafter referred to as "Purchased Price"). Attorney/Seller agrees to assign and sell such portion of their legal fees in exchange for the "purchase price."

Attorney/Seller sells and assigns to TSF all rights and interest in and to the first $770,000.00 (The Purchase Amount) of any amounts payable to Attorney/Seller or his firm related to the above Legal Action(s) free and clear of all claims, liens, interest, defenses, setoffs, and encumbrances. In return for the Purchase Amount, TSF will pay Attorney/Seller the Purchase Price.   TSF and Attorney/Seller intend and agree that the transaction contemplated shall constitute a true sale and transfer of each Legal Fee to TSF, thereby providing TSF with the full risks and benefits ownership.

(emphasis added)

Case No.  01-20-0005-1630
**OPINION**

**Time of Payment to TSF – Receipt of Funds Repayment Amount**

Immediately upon receipt of any plaintiff contingency fees and/or class common benefit fees earned and/or awarded in connection with the NFL concussion class action, whether paid to Attorney/Seller by check, certified funds, and/or electronic bank transfers, Attorney/Seller agrees to provide TSF with notice of such receipt of funds, as well as a photo or electronic copy of the settlement check or wire transfer. Following receipt of such notice, TSF shall provide Attorney/Seller with the repayment amount as set forth in this agreement.

Attorney/Seller agrees to forward and pay to TSF the repayment amount no later than One (1) week after receipt of the funds referred to in clause (a) above.

In the event that the Attorney/Seller receives any fee in installments, Attorney/Seller agrees to forward and pay to TSF no later than One (1) week following receipt of each installment payment. Any partial payments received by Attorney/Seller shall be paid to TSF in full until such time as TSF has been paid the Purchase Amount in full.

The contract thus provides that Mitnick Law will receive $500,000.00 (purchase price) from Balanced (TSF). Mitnick Law, in return for this cash advance, sells and assigns to Balanced (TSF) the first $770,000.00 (purchase amount) that Mitnick Law receives as legal fees from the NFL Litigation. Mitnick Law is obligated to pay Balanced the legal fees it receives from the litigation within one week of receipt until the full $770,000.00 was paid.

4

Case No.  01-20-0005-1630
**OPINION**

The Assignment also contained the following Schedule B.

### Exhibit B

If no breach has occurred and TSF receives the full Purchase Amount by any of the following dates, TSF will pay to the Attorney/Seller the following additional consideration in the form of an increase in Purchase Price.

TOTAL AMOUNT DUE, $770,000.00
9/21/15

Rebate Amount if Repaid by

| | |
|---|---|
| October 21, 2015 | $262,500.00 |
| November 21, 2015 | $255,000.00 |
| December 21, 2015 | $247,500.00 |
| January 21, 2016 | $240,000.00 |
| February 21, 2016 | $232,500.00 |
| March 21, 2016 | $225,000.00 |
| April 21, 2016 | $217,500.00 |
| May 21, 2016 | $210,000.00 |
| June 21, 2016 | $202,500.00 |
| July 21, 2016 | $195,000.00 |
| August 21, 2016 | $187,500.00 |
| September 21, 2016 | $180,000.00 |
| October 21, 2016 | $172,500.00 |
| November 21, 2016 | $165,000.00 |
| December 21, 2016 | $157,500.00 |
| January 21, 2017 | $150,000.00 |
| February 21, 2017 | $142,500.00 |
| March 21, 2017 | $135,000.00 |
| April 21, 2017 | $127,500.00 |
| May 21, 2017 | $120,000.00 |
| June 21, 2017 | $112,500.00 |
| July 21, 2017 | $105,000.00 |
| August 21, 2017 | $97,500.00 |
| September 21, 2017 | $90,000.00 |
| October 21, 2017 | $82,500.00 |
| November 21, 2017 | $75,000.00 |
| December 21, 2017 | $67,500.00 |
| January 21, 2018 | $60,000.00 |
| February 21, 2018 | $52,500.00 |
| March 21, 2018 | $45,000.00 |
| April 21, 2018 | $37,500.00 |
| May 21, 2018 | $30,000.00 |
| June 21, 2018 | $22,500.00 |
| July 21, 2018 | $15,000.00 |
| August 21, 2018 | $7,500.00 |
| September 21, 2018 | $0.00 |

*[signature]*
MANAGING MEMBER
PUTNICK LAW OFFICE, LLC. 9/24/15

5

Case No.  01-20-0005-1630
**OPINION**

According to Schedule B, Mitnick Law would receive increases in the Purchase Price if the

Purchase Amount was received by the benchmarks set forth in the Schedule.

An Addendum to this Agreement memorialized an increase in the Purchase Price to a total

of $900,000.00 and a corresponding increase in the Purchase Amount to $1,386,000.00.  The

Addendum contained a revised Schedule B setting forth increases in the Purchase Price Mitnick

Law would receive if payment of the Purchase Price was received by the designated benchmarks.

### Exhibit B

If no breach has occurred and TSF receives the full Purchase Amount by any of the following dates, TSF
will pay to the Attorney/Seller the following additional consideration in the form of an increase in
Purchase Price.

TOTAL AMOUNT DUE  $1,386,000.00
12/31/15

Rebate Amount if Repaid by

| | |
|---|---|
| December 31, 2015 | $472,500.00 |
| January 31, 2016 | $459,000.00 |
| February 29, 2016 | $445,500.00 |
| March 31, 2016 | $432,000.00 |
| April 30, 2016 | $418,500.00 |
| May 31, 2016 | $405,000.00 |
| June 30, 2016 | $391,500.00 |
| July 31, 2016 | $378,000.00 |
| August 31, 2016 | $364,500.00 |
| September 30, 2016 | $351,000.00 |
| October 31, 2016 | $337,500.00 |
| November 30, 2016 | $324,000.00 |
| December 31, 2016 | $310,500.00 |
| January 31, 2017 | $297,000.00 |
| February 28, 2017 | $283,500.00 |
| March 31, 2017 | $270,000.00 |
| April 30, 2017 | $256,500.00 |
| May 31, 2017 | $243,000.00 |
| June 30, 2017 | $229,500.00 |
| July 31, 2017 | $216,000.00 |
| August 31, 2017 | $202,500.00 |
| September 30, 2017 | $189,000.00 |
| October 31, 2017 | $175,500.00 |
| November 30, 2017 | $162,000.00 |
| December 31, 2017 | $148,500.00 |
| January 31, 2018 | $135,000.00 |
| February 28, 2018 | $121,500.00 |
| March 31, 2018 | $108,000.00 |
| April 30, 2018 | $94,500.00 |
| May 31, 2018 | $81,000.00 |
| June 30, 2018 | $67,500.00 |
| July 31, 2018 | $54,000.00 |
| August 31, 2018 | $40,500.00 |
| September 30, 2018 | $27,000.00 |
| October 31, 2018 | $13,500.00 |
| November 30, 2018 | $0.00 |

6

The next Agreement executed by the parties' states that the Purchase Price i.e. cash advanced to Mitnick Law is $1,097,592.78. However, there is no Purchase Amount set forth. Instead, Mitnick Law is required to make payments according to a Scheduled attached to the Agreement.

The Schedule of Payments is as follows:

<u>SCHEDULE I</u>

Schedule of Payments

| | |
|---|---|
| June 30, 2016 | $1,114,971.33 |
| July 31, 2016 | $1,132,625.05 |
| August 31, 2016 | $1,150,558.27 |
| September 30, 2016 | $1,168,775.45 |
| October 31, 2016 | $1,187,281.06 |
| November 30, 2016 | $1,206,079.68 |
| December 31, 2016 | $1,225,175.94 |
| January 31, 2017 | $1,244,574.56 |
| February 28, 2017 | $1,264,280.32 |
| March 31, 2017 | $1,284,298.09 |
| April 30, 2017 | $1,304,632.81 |
| May 31, 2017 | $1,325,289.50 |
| June 30, 2017 | $1,346,273.25 |
| July 31, 2017 | $1,367,589.24 |
| August 31, 2017 | $1,389,242.74 |
| September 30, 2017 | $1,411,239.08 |
| October 31, 2017 | $1,433,583.70 |
| November 30, 2017 | $1,456,282.11 |
| December 31, 2017 | $1,479,339.91 |
| January 31, 2018 | $1,502,762.79 |
| February 28, 2018 | $1,526,556.53 |
| March 31, 2018 | $1,550,727.01 |
| April 30, 2018 | $1,575,280.19 |
| May 31, 2018 | $1,600,222.13 |
| June 30, 2018 | $1,625,558.98 |
| July 31, 2018 | $1,651,296.99 |
| August 31, 2018 | $1,677,442.53 |
| September 30, 2018 | $1,704,002.04 |
| October 31, 2018 | $1,730,982.07 |
| November 30, 2018 | $1,758,389.29 |
| December 31, 2018 | $1,786,230.45 |
| January 31, 2019 | $1,814,512.43 |
| February 28, 2019 | $1,843,242.21 |
| March 31, 2019 | $1,872,426.88 |
| April 30, 2018 | $1,902,073.64 |
| May 31, 2018 | $1,932,189.80 |

7

Moreover, there is no provision for additional increases to the Purchase Price in the event of

timely payment of the Purchase Amount as was set forth in the two Exhibit B's attached to the

original Agreement and the Addendum to it.

The parties ultimately entered into an Agreement dated June 2, 2017 described as a "Master

Agreement with respect to all transactions concerning the Seller's sale of Legal Fee."  The title to

the Agreement is:

**MASTER NON-RECOURSE PURCHASE AND SALE AGREEMENT
(ATTORNEYS' FEES)**

Significant provisions of this "Master Non-Recourse Purchase and Sale Agreement" include the

following:

1.      **Purchase Price; Sale and Assignment; and Consideration**

(a)      Seller hereby sells, transfers and assigns to Purchaser all or a portion of its
legal and beneficial right, title and interest, free and clear of all claims, liens, interest,
defenses, setoffs, and encumbrances, in and to the Legal Fees.

(b)      Purchaser shall pay to the Seller in respect of the Legal Fees the amount set
forth in the Rider (the "Purchase Price").

(c)      In consideration of the Purchase Price, Seller agrees to pay to the Purchaser
the scheduled amount (the "Scheduled Payments") as set forth in Exhibit B to the Rider.

(d)      The Seller shall collect the Legal Fees when due and payable until the
Scheduled Payments are paid in full.  Within three (3) days after Seller's collection and
receipt of such Legal Fees, Seller shall distribute or cause to be distributed to Purchaser all
Legal Fees prior to any costs or expenses incurred by the Seller in connection with its
collection of such Legal Fees.  Seller shall hold the Legal Fees in trust for the Purchaser.

(e)      Notwithstanding anything to the contrary stated herein, upon payment in
full of all of the Scheduled Payments by Seller, all obligations of the Seller hereunder shall
be satisfied.

5944343-1

2.    **True Sale; Not a Loan**

Seller intends and agrees that the transaction contemplated in this Agreement shall constitute a true sale and transfer to Purchaser of the Legal Fees.

(a)    Seller agrees and understands that any funds received in respect of the Legal Fees shall be paid to Purchaser with no other disbursements being made until Seller's obligations to Purchaser hereunder have been fully satisfied.

(e)    Upon the request of Purchaser, Seller shall provide Purchaser with updates, including status changes and related documentation, if any, in respect of the Lawsuit.

8.    **Events of Default**

Any of the following events shall be deemed to be an event of default under this Agreement (each an "Event of Default").

(a)    Default in the payment when due of any of the payments that represent the Scheduled Payments.

10.    **Cross Default; Cross Collateral**

Seller hereby agrees that (a) an Event of Default under this Agreement is a default or an Event of Default under any other non-recourse purchase and sale agreements between Seller and Purchaser and a default under any such non-recourse purchase and sale agreements is a default hereunder and (b) the Legal Fees shall secure all of Seller's obligations under each of such now existing or hereafter outstanding non-recourse purchase and sale agreements and the legal fees sold to Purchaser by the Seller under any of such non-recourse purchase and sale agreements secures all of Seller's obligations to the Purchaser under this Agreement.

Case No.  01-20-0005-1630
**OPINION**

EXHIBIT B

Schedule of Payments

| | | | |
|---|---|---|---|
| June 30, 2017 | $2,223,937.20 | December 31, 2018 | $2,950,711.79 |
| July 31, 2017 | $2,259,149.54 | January 31, 2019 | $2,997,431.39 |
| August 31, 2017 | $2,294,919.41 | February 28, 2019 | $3,044,890.72 |
| September 30, 2017 | $2,331,255.63 | March 31, 2019 | $3,093,101.49 |
| October 31, 2017 | $2,368,167.18 | April 30, 2019 | $3,142,075.60 |
| November 30, 2017 | $2,405,663.16 | May 31, 2019 | $3,191,825.13 |
| December 31, 2017 | $2,443,752.83 | June 30, 2019 | $3,242,362.36 |
| January 31, 2018 | $2,482,445.58 | July 31, 2019 | $3,293,699.76 |
| February 28, 2018 | $2,521,750.97 | August 31, 2019 | $3,345,850.01 |
| March 31, 2018 | $2,561,678.69 | September 30, 2019 | $3,398,825.97 |
| April 30, 2018 | $2,602,238.60 | October 31, 2019 | $3,452,640.71 |
| May 31, 2018 | $2,643,440.71 | November 30, 2019 | $3,507,307.52 |
| June 30, 2018 | $2,685,295.19 | December 31, 2019 | $3,562,839.89 |
| July 31, 2018 | $2,727,812.37 | January 31, 2020 | $3,619,251.53 |
| August 31, 2018 | $2,771,002.73 | February 29, 2020 | $3,676,556.34 |
| September 30, 2018 | $2,814,876.94 | March 31, 2020 | $3,734,768.48 |
| October 31, 2018 | $2,859,445.82 | April 20, 2020 | $3,793,902.32 |
| November 30, 2018 | $2,904,720.38 | May 31, 2020 | $3,853,972.44 |

With my signature below, I acknowledge and understand if distribution of the Scheduled Payments has not been paid to TSF by the last date of the above Schedule of Payments, the Scheduled Payments will continue to accrue at the same rate as described in the Purchase and Sale Agreement until distribution occurs.

_____
Mitnick Law Office, LLC

10

Case No.  01-20-0005-1630
**OPINION**

RIDER No. 2

RIDER No. 2 TO MASTER NON- RECOURSE PURCHASE AND SALE AGREEMENT
DATED APRIL 23, 2018
(ATTORNEYS' FEES)

Rider No. 2 dated as of April 23, 2018 to that certain Master Non-Recourse Purchase and
Sale Agreement dated as of June 2, 2017 between Mitnick Law Office, LLC and Thrivest
Specialty Funding, LLC (the "Master Agreement")

Reference is hereby made to that certain Master Agreement between Mitnick Law Office,
LLC (the "Seller") and Thrivest Specialty Funding, LLC (the "Purchaser") and dated as of
June 2, 2017. All capitalized terms not otherwise defined in this Rider No. 2 shall have the
same meanings as ascribed to them in the Master Agreement. All terms and conditions of the
Master Agreement are hereby incorporated herein by reference as if they were fully set forth
in this Rider No. 2.

Reference is hereby made to that certain Rider dated June 2, 2017 ("Prior Rider"), whereby
the Purchaser advanced the sum of $2,189,873.70 to the Seller. The amounts advanced to the
Seller under this Rider are in addition to those amounts advanced in the Prior Rider.

1. Seller hereby acknowledges and understands and agrees that it shall be subject to all
   of the terms and conditions as set forth in the Master Agreement including but not
   limited to Seller's agreement to pay the Scheduled Payments (described on Exhibit B
   hereto) to the Purchaser. Moreover, Seller agrees that as a condition to the Purchaser
   paying the Purchase Price to the Seller, Seller must obtain the signature of the
   Obligor on the Irrevocable Authorization, Agreement and Acknowledge to Pay, the
   form of which is attached hereto as Exhibit A.

2. Seller agrees that Purchaser may deduct the Transaction Fees in the amount set forth
   below in this Rider No. 2 from the Purchase Price.

**Description of Legal Fees:** United States District Court for the Eastern District of Pennsylvania -
In RE: National Football League Player's Concussion Injury Litigation; Docket No: 2-12-md-
02323-AB; MDL No. 2323; Civ. Action No.:14-cv-00029-AB.

**Scheduled Payments** (*Purchase Price plus an annual investment return of 19% accruing and compounded
monthly*): See Exhibit B attached hereto and made a part hereof.

| | |
|---|---|
| **Purchase Price:** | $515,463.92 |
| **Transaction Fees:** | $ 15,463.92 |
| **Amounts Withheld:** | $    0.00 |
| **Net to Attorney:** | $500,000.00 |

11

Case No.  01-20-0005-1630
**OPINION**

cc: Thrivest Specialty Funding, LLC

### EXHIBIT B

Description of Scheduled Payments

| | | | |
|---|---|---|---|
| April 30, 2018 | $523,625.43 | October 31, 2019 | $694,744.32 |
| May 31, 2018 | $531,916.17 | November 30, 2019 | $705,744.44 |
| June 30, 2018 | $540,338.17 | December 31, 2019 | $716,918.72 |
| July 31, 2018 | $548,893.53 | January 31, 2020 | $728,269.94 |
| August 31, 2018 | $557,584.34 | February 29, 2020 | $739,800.88 |
| September 30, 2018 | $566,412.76 | March 31, 2020 | $751,514.39 |
| October 31, 2018 | $575,380.96 | April 30, 2020 | $763,413.37 |
| November 30, 2018 | $584,491.16 | May 31, 2020 | $775,500.75 |
| December 31, 2018 | $593,745.61 | June 30, 2020 | $787,779.51 |
| January 31, 2019 | $603,146.58 | July 31, 2020 | $800,252.69 |
| February 28, 2019 | $612,696.40 | August 31, 2020 | $812,923.35 |
| March 31, 2019 | $622,397.42 | September 30, 2020 | $825,794.64 |
| April 30, 2019 | $632,252.05 | October 31, 2020 | $838,869.72 |
| May 31, 2019 | $642,262.71 | November 30, 2020 | $852,151.82 |
| June 30, 2019 | $652,431.87 | December 31, 2020 | $865,644.23 |
| July 31, 2019 | $662,762.04 | January 31, 2021 | $879,350.26 |
| August 31, 2019 | $673,255.77 | February 28, 2021 | $893,273.31 |
| September 30, 2019 | $683,915.65 | March 31, 2021 | $907,416.80 |

With my signature below, I acknowledge and understand if distribution of the Scheduled
Payments has not been paid to TSF by the last date of the above Schedule of Payments, the
Scheduled Payments will continue to accrue at the same rate as described in the Purchase and
Sale Agreement until distribution occurs.

Mitnick Law Office, LLC

MATTHEW COWPERTHWAIT
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 11/18/2018

5944343-1

With respect to the Schedule of Payments attached to the Master Agreement Mitnick states the "Schedule of payments did not concern me since it was described as requiring payment only in the event that payout on the Settlement was not achieved by May 31, 2020. (Mitnick Brief p.8) Mitnick makes a similar statement with respect to the payment schedule attached as Rider 2 of the Master Agreement dated April 25, 2018.  He states that the "outside date was so far away and certainly Settlement Funds would be in by that time."

Mitnick Law received between $2,150,000.00 (according to Mitnick) and $2,208,194.06 (according to Balanced) cash advances from Balanced from September 2015 through April 2018. Mitnick Law was dealt several setbacks with respect to its anticipated Legal Fees from the NFL litigation.  Mitnick Law anticipated receiving between 5 to 10 million dollars in common benefit legal fees.  This would have enabled Mitnick to pay off Balanced and have several million dollars for the firm.  Mitnick Law, however, was only awarded $700,000.00.  Second, the trial court judge reduced the contingent fees of attorneys representing the players from 33⅓% to 17%.  Third, the Court ordered a 5% hold back from each award.

When Mitnick Law began receiving Legal fees it forwarded them to Balanced.  Between July 2018 and March 2019 Mitnick Law made the following payments to Balanced:

| 07-31-18 | $673,959.38 |
|----------|-------------|
| 08-17-18 | $558,166.00 |
| 08-30-18 | $400,000.00 |
| 09-17-18 | $90,766.34 |
| 09-24-18 | $790.17 |
| 12-27-18 | $55,546.00 |
| 03-18-19 | $90,500.00 |

13

In all, Mitnick Law has repaid to Balanced between $1,850,000.00 (according to Mitnick) and $1,869,727.89 (according to Balanced).

Mitnick Law admits that it has stopped paying Balanced fees it has received in the NFL Litigation. Mitnick Law says it did so after Genovesi advised Mitnick that the funding Agreements remain in effect for as long as the NFL Settlement remained in effect and after Mitnick's accountant advised him of the financing charges.

The Agreements require Mitnick Law to turn over legal fees received from NFL Litigation to Balanced until its obligations have been satisfied. Mitnick has not as yet repaid all the cash advances received let alone any interest. Thus, there is an admitted breach. The issue to be resolved is are the agreements valid and binding.

**ANALYSIS**

I.    ARE THE AGREEMENTS NON-RECOURSE CONTRACTS

Balanced asserts that the Agreements between it and Mitnick Law are non-recourse contracts "in that Mitnick Law has no payment obligation if it does not receive payment in the NFL Concussion Class Action settlement program". (Balanced Brief, p.2). Balanced in its opposition Brief similarly states "if Mitnick Law receives legal fees from NFL concussion cases it is obligated to report and pay them over to Balanced Bridge per the repayment schedule in the agreement. No such liability attaches absent Mitnick Law's receipt of such legal fees". (Opposition Brief, p.7) Balanced further declares in its Supplemental Brief that Mitnick Law's payment obligation is limited to receipt of payment on NFL concussion cases. (Supplemental Brief, p.4)

14

2:21-mc-00075-GAM   Document 1-2   Filed 10/25/21   Page 41 of 45

Mitnick Law in its moving Brief argues that there is an inconsistency in the Agreements as to whether the contracts are non-recourse. Mitnick Law acknowledges that the Title to the Master Agreement includes the term Non-Recourse. However, Mitnick Law asserts that the Agreement describes a default as the failure to make a payment when due of any of the payments that represent the Scheduled Payments. In the event of such a default Mitnick Law contends the Agreement renders Mitnick Law liable for all scheduled payments plus damages. Mitnick Law thus argues that the obligation to make payments in accordance with the Schedule and the remedies available upon failure to do so are inconsistent with a non-recourse contract. Therefore, according Mitnick Law this inconsistency renders the Agreements unenforceable.

The task of a tribunal in interpreting a contract is to ascertain the intent of the parties from the terms used in the document and the parties course of conduct Restatement (Second) of Contracts Section 202.

The relationship between Balanced and Mitnick Law discloses the following:

1.  The first agreement between the parties limited Mitnick Law's obligation to repay $770,000.00 solely from the legal fees it received from in the NFL litigation. This was clearly a non-recourse contract.

2.  The first agreement between the parties which included a Schedule of payments lists approximately 24 payments which came due before Mitnick Law received its first fees from the NFL Litigation. Balanced never sought to default Mitnick Law for failing to make any of the payments set forth in the schedule.

3.  The Title to Master Agreement is "Master Non-Recourse Purchase and Sale Agreement (Attorneys' Fees)."

4.  The Master Agreement includes paragraph 10 which refers to the agreements between the parties as non-recourse purchase and sale agreements and states "the legal fees sold to Purchaser by the Seller under any of such non-recourse purchase and sale agreements secures all of Seller's obligations to the Purchaser under this Agreement."

15

Case No.  01-20-0005-1630
**OPINION**

5.  Mitnick Law itself describes Paragraph 10 in the agreement "is in accord with the plain title of the Master Agreement and in keeping with the Claimant's representations and the Respondents' understanding." (Mitnick Law's Supplement Brief, p.4)

The foregoing demonstrates that the agreements between the parties are non-recourse contracts which limit Mitnick Law's payment obligation to receipt of legal fees from NFL concussion cases. The fact that Balanced never sought to default Mitnick Law for failing to make a payment in accordance with the schedule demonstrates the validity of Claimant's argument that the payment schedule is a "projection tool showing total payment obligations at different points in time assuming Mitnick Law's receipts supported those amounts and that Mitnick Law had not made prior payments." (Balanced's Supplement Brief, p.4)

Thus, the provisions in the Agreements made clear through the language used and the parties conduct establish non-recourse contracts.

## II.    NON-RECOURSE CONTRACT ARE PERMISSIBLE IN LEGAL FUNDING CASES

The Third Circuit in Obermayer, Rebmann, Maxwell & Hippel v. West, No. 16-1376, 2018 WL 1074310 at 2 (3d Cir. Feb. 27, 2018) ruled that a contract for funding pending the resolution of litigation is enforceable. Obermayer represented West in a suit against Reed Smith for alleged malpractice. During the course of the litigation West on several occasions received funds from the litigation funder Fast Trak. The Agreements between West and Fast Trak stated that the contracts were non-recourse because there was no obligation for West to make payments except from the proceeds of the Reed Smith litigation. West received $164,000.00 from Fast Trak. When the Reed Smith case settled Fast Trak sent West a payoff letter stating he owed $373,885.00 from the settlement proceeds. West balked at paying claiming the underlying agreements were

16

unenforceable as usurious.  The Third Circuit disagreed.  The Court stated that the transactions in question were not loans subject to usury law because Fast Traks' right to repayment was contingent on the success of the Reed Smith suit.

In the instant case it has already been established that the agreements between Balanced and Mitnick Law are non-recourse contracts contingent on Mitnick Law's receipt of fees from the NFL Litigation.  The contingent nature of the contracts makes the agreements enforceable.

III.    MITNICK LAW'S CHALLENGES TO THE AGREEMENTS FAIL

A.    THE AGREEMENTS ARE NOT CHAMPERTOUS

Mitnick Law's effort to characterize the Agreements in question as champertous fails. Champerty is a "bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in a consideration of receiving part of any judgment proceeds."  Riffin v. Consolidated Rail Corp., 363 F. Supp.3d 569 (E.D. Pa 2019).  An assignment is champertous where the party involved has no interest in the litigation, expends his own money to prosecute the suit and is entitled to a portion of the proceeds received from the litigation.  Frank v. Tewinkle, 45 A.3d 434 (Pa. Super. 2012).

In the case at bar the champerty doctrine does not apply because Balanced did not take an assignment of claims in the underlying cases nor did it pursue any of the claims in the NFL Litigation.  Balanced purchased Mitnick Law's rights to counsel fees if such fees were awarded, it did not prosecute any case.  Furthermore, Balanced did not fund any particular case.  Balanced advanced funds to enable Mitnick Law to continue the firm's general operations.

B.    MITNICK LAW DOES NOT IDENTIFY FALSE REPRESENTATIONS
      NEEDED TO ESTABLISH FRAUD

Mitnick Law appears to argue that the agreements are the product of fraud because Genovesi represented that the contracts were non-recourse which Mitnick Law states is "simply erroneous." However, this opinion has already established that the agreements are indeed non-recourse contracts in which Mitnick Law's obligation to repay is predicated upon its receipt of fees from the NFL Litigation. Moreover, as I noted earlier in this opinion Mitnick's Law states that the Title to the Master Agreement and Paragraph 10 reflect Balanced representations and Mitnick Law's understanding about the nature of the agreements. Mitnick Law's claim of fraud based on its contention that Genovesi misrepresented the agreements as non-recourse is not accurate. The agreements, are as Genovesi stated, non-recourse.

IV.    THERE IS NO SUPPORT IN THE RECORD FOR MITNICK LAW'S CONTENTION
       THAT THE ARGREEMENTS ARE UNCONSCIONABLE

Mitnick Law once again asserts that the Agreements must be set aside because the Agreements were represented to be non-recourse and they are not. Mitnick Law is wrong. The Agreements are non-recourse. Thus, there is no basis for its argument of unconscionability.

Case No.  01-20-0005-1630
**OPINION**

## SUMMARY

The fees Mitnick Law anticipated receiving in the NFL Litigation have not been in the amounts the firm anticipated.  This may be a factor in its challenge to the Agreements.  However, a review of the Agreements and an examination of Mitnick Law's challenges demonstrates that the Agreements are valid.  Mitnick Law has admitted breach.  Therefore, Balanced's application for Summary Judgment as to liability is granted.  Mitnick Law's application to dismiss the claim is denied.

## DAMAGE HEARING

This case is listed for a Damage Hearing on June 8 and 9, 2021.  Among the items to be addressed are:

1.  Exhibit B to the First Addendum established Mitnick Law's obligation as $1,386,000.00.  The schedule provides that if this obligation is paid by August 31, 2018 Mitnick Law is to receive $40,500 increase in purchase price.  It appears that Mitnick paid that amount by August 30, 2018.  Have these payments and rebate been factored into Mitnick Law's obligation?

2.  The Schedule of Payments refers to a rate described in the Purchase and Sale Agreement.  What is the rate and where is it to be found?

Dated: May 27 , 2021

Francis J. Orlando, Jr., Arbitrator

5944343-1