# EXHIBIT F

Legal Brief submitted to AAA Arbitrator by Respondent regarding conflict issue

AMERICAN ARBITRATION ASSOCIATION

BALANCED BRIDGE FUNDING LLC fka  
THRIVEST SPECIALTY FUNDING LLC

v.

MITNICK LAW OFFICE, LLC

Case No. 01-20-0005-1630

Hon. Francis J. Orlando, Jr. A.J.S.C. (Ret.), Arbitrator

**OPPOSITION TO RESPONDENT'S MOTION TO  
DISQUALIFY FOX ROTHSCHILD LLP AS COUNSEL FOR CLAIMANT**

## I. Introduction

This is a straightforward dispute regarding the Respondent Mitnick Law Office's ("Mitnick Firm") contractual obligation to disclose and pay over proceeds from the NFL Concussion Class Action, which it sold to Claimant Balanced Bridge Funding LLC fka Thrivest Specialty Funding LLC ("Balanced Bridge") in exchange for millions of dollars in cash advances. The Mitnick Firm either received proceeds it did not pay to Balanced Bridge—in which case the Mitnick Firm is in breach to the extent of its withholding—or it did not. Based upon Mr. Mitnick's own admission, the Mitnick Firm has withheld proceeds in violation of its contractual promises. Mr. Mitnick made that admission directly to Balanced Bridge after Fox Rothschild's representation of the Mitnick Firm had ended—Fox Rothschild has no independent knowledge regarding the admission. The Mitnick Firm's current motion to disqualify Fox Rothschild LLP in this arbitration is only the most recent in a series of efforts by the Mitnick Firm to avoid its contractual obligations[1] and to delay turning over the proceeds it promised to Balanced Bridge, which the Mitnick Firm could be dissipating by the day.

---

[1] The Mitnick Firm's repeated suggestion of willingness to disclose funds received but not remitted to Balanced Bridge proves hollow given that, as of this submission, the Mitnick Firm has yet to provide any such disclosure. Nor has the Mitnick Firm provided any status update to Balanced Bridge in over eight months, despite the agreement's requirement that it did so.

The motion should be denied. **First,** Fox Rothschild's former representation of the Mitnick Firm was limited to a referral fee dispute with another law firm regarding clients in the NFL Concussion Class Action and to counseling the Mitnick Firm about its claim to common benefit fees in the NFL Class Action. Fox Rothschild's former representation of the Mitnick Firm did not include representation with respect to the Mitnick Firm's agreement with Balanced Bridge, nor any involvement with the Mitnick Firm's receipt of proceeds from the NFL Concussion Class Action for representing individual plaintiffs. Indeed, Fox Rothschild's representation of the Mitnick Firm ended before any attorney's fees were actually paid in the NFL Concussion Class Action. Thus, Fox Rothschild's former representation of the Mitnick Firm is not substantially related to Balanced Bridge's current effort to enforce its agreement with the Mitnick Firm. That current effort concerns only what the Mitnick Firm did with the proceeds from the NFL Concussion Class Action, and not the Mitnick Firm's entitlement to such proceeds in the first instance.

**Second,** in engaging Fox Rothschild, the Mitnick Firm consented to future adverse representations in unrelated matters even if the Mitnick Firm remained a current Fox Rothschild client. The circumstances here, where the Mitnick Firm is a former client, are even more compelling. The Mitnick Firm's consent to future adversity weighs against disqualification.

**Third,** Fox Rothschild has no confidential information pertaining to the Mitnick Firm that would materially advance Balanced Bridge's position in this matter. The only information relevant the current dispute is the extent to which the Mitnick Firm has received proceeds from the NFL Concussion Class Action and has not turned them over to Balanced Bridge as required. It is undisputed that the Mitnick Firm received common benefit fees in the NFL Concussion Class Action—pursuant to an Order of the Court that is in the public record—and that the

Mitnick Firm paid those proceeds to Balanced Bridge as required. Thus, this case is only about whether the Mitnick Firm has received proceeds from the NFL Concussion Class Action beyond the publicly disclosed common benefit fees. Such fees would result from the Mitnick representation of individual claimants, but the Mitnick Firm has not alleged that Fox Rothschild has any information about the Mitnick Firm's receipt of such proceeds. Even if the Mitnick Firm made such an allegation, this information would be discoverable in this action in any event because the Mitnick Firm promised those proceeds to Balance Bridge under the terms of the funding agreements in exchange for substantial advances.

**Fourth,** the Mitnick Firm's motion to disqualify should be denied because it is purportedly supported by a Certification of Craig R. Mitnick, Esquire that contains demonstrably false information about Mr. Buckley's involvement in Fox Rothschild's representation of the Mitnick Firm and about Mr. Mitnick's role in Fox Rothschild's relationship with Balanced Bridge.

**Finally,** the Arbitrator should deny the Mitnick Firm's motion because Fox Rothschild serves as Balanced Bridge's only outside counsel and, thus, Balanced Bridge would be materially prejudiced if forced to retain substitute counsel—not only because of the added expense and necessity of establishing a new relationship, but also because the associated delay would allow the Mitnick Firm to continue to dissipate funds owed to Balanced Bridge in clear violation of its contractual promises.

For these reasons, Balanced Bridge respectfully requests that the Arbitrator deny the Mitnick Firm's motion and allow this matter to proceed.

## II. Facts

Fox Rothschild LLP's former representation of Mr. Mitnick and the Mitnick Firm began in October 2012, ended in May 2018, and was limited to advising Mr. Mitnick and the Mitnick Firm regarding a referral arrangement with the Locks Law Firm and to counseling the Mitnick Firm about its claim to common benefit fees in the NFL Concussion Class Action. See Exhibit 1, Declaration of Peter C. Buckley, Esquire.[2] The entirety of the engagement involved 44.6 hours of work and $29,623 in fees, a material portion of which the Mitnick Firm never paid. Id.

Specifically, the engagement letter—which the Mitnick Firm omitted from its filing—defines the scope of the engagement as "Consultation and on-going advice regarding the referral arrangement between you and Gene Locks and his law firm in the In re National Football Players Concussion Injury Litigation." Id. The engagement letter continues to note, "You have not engaged the Firm, nor has the Firm agreed, to represent you regarding any other matter." Id. Later, the Mitnick Firm requested assistance with its claim to common benefit fees in the NFL Concussion Class Action and Fox Rothschild agreed to expand its representation for that limited purpose.

Nothing in the engagement letter nor the time sheets that the Mitnick Firm attached to its motion indicate representation beyond that limited scope, much less the broad representation that the Mitnick Firm suggests. To the contrary, the time entries attached to the motion describe services fully in line with the engagement letter; that is, assisting the Mitnick Firm in its dealings

---

[2] Fox Rothschild's main office, which at all pertinent times was also the resident office of attorneys Abraham Reich, Peter Buckley, and Eric Reed, is located in Philadelphia, Pennsylvania. Id. The NFL Concussion Litigation is pending in the U.S. District Court for the Eastern District of Pennsylvania, and was at all pertinent times. Balanced Bridge was located in Pennsylvania at all pertinent times. The funding agreements between the Mitnick Firm and Balanced Bridge all call for arbitration in Pennsylvania and the application of Pennsylvania law in the event of a dispute.

with the Locks Firm regarding the division of attorney fees for recoveries in the NFL Concussion Class Action and counseling the Mitnick Firm about its claim to common benefit fees in the NFL Concussion Class Action. Importantly, Fox Rothschild had no involvement in the Mitnick Firm's agreement with Balanced Bridge, nor any involvement with the Mitnick Firm's receipt of proceeds from the NFL Concussion Class Action for representing individual plaintiffs.

In engaging Fox Rothschild, the Mitnick Firm expressly acknowledged that the representation would not disqualify Fox Rothschild from opposing the Mitnick Firm in other matters unrelated to the engagement, even if the Mitnick Firm remained a current client:

> Client agrees that the Firm's representation of Client in the Engagement will not disqualify the Firm from opposing Client in other matters that are unrelated to the Engagement, and Client consents to any conflict of interest with respect to those representations.

Id. However, the Mitnick Firm did not remain a current Fox Rothschild client.

The attorney-client relationship with the Mitnick Firm concluded well before Balanced Bridge engaged Fox Rothschild in connection with this matter. As is captured in the invoices and time sheets attached to the Mitnick Firm's motion, Fox Rothschild's last work for the Mitnick Firm occurred in May 2018, marking the end of the attorney-client relationship. Thereafter, Fox Rothschild engaged in no further work for the Mitnick Firm, and the Mitnick Firm ignored Fox Rothschild's repeated efforts to collect its account receivable in connection with the engagement. See Exhibit 1, Buckley Declaration. There can be no confusion under those circumstances that the engagement concluded, rendering the Mitnick Firm a former client.

The master funding agreement between Balanced Bridge and the Mitnick Firm, which the Mitnick Firm attached to its motion, is dated June 2, 2017. Fox Rothschild had no role in that or in any other funding agreements or transactions between Balanced Bridge and the Mitnick Firm, on behalf of either party. Id.

Over a year after Fox Rothschild performed its last work for the Mitnick Firm, Balanced Bridge engaged Fox Rothschild to request information regarding the Mitnick Firm's receipt of fees and, later, to pursue the Mitnick Firm with respect to its defaults under the funding agreements. Id. By that time, Balanced Bridge had come to trust Fox Rothschild as its outside general counsel, and the firm was handling all enforcement actions on behalf of Balanced Bridge. Fox Rothschild attorney Peter Buckley and Balanced Bridge principal Joseph Genovesi were college classmates and friends at Villanova. Id. In addition, Mr. Buckley and Mr. Genovesi both served on the board of a regional nonprofit organization, Big Brothers Big Sisters. Those relationships, and not any efforts of Mr. Mitnick to "introduce" Mr. Buckley to his college classmate whom he had known for decades, led to Fox Rothschild representing Balanced Bridge in this and other matters. Id. Mr. Mitnick's certification that Mr. Buckley requested a referral to Mr. Genovesi is false, as is Mr. Mitnick's certification that Mr. Buckley was involved in Fox Rothschild's representation of the Mitnick Firm from October 2012 through late 2018. Mr. Buckley's first time entry is for December 15, 2016 for a lunch where he met Mr. Mitnick for the first time. Id.

In an effort to efficiently address the Mitnick Firm's objection to Fox Rothschild's representation of Balanced Bridge in this matter, Fox Rothschild offered as a courtesy to screen from this matter attorneys Peter Buckley and Abraham Reich (the attorneys who handled the former representation of the Mitnick Firm). Though it had no obligation to do so, Fox Rothschild fully honored this screen until the need to respond to the current motion and the Mitnick Firm's rejection of that arrangement made it impossible to do so. Id.

## III. Argument

Preamble 19 to the Pennsylvania Rules of Professional Conduct warns that "[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." Similarly, the case law notes "the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes." Hamilton v. Merrill Lynch, 645 F.Supp. 60, 61 (E.D.Pa. 1986). Disqualification is a harsh measure, and therefore, "motions to disqualify opposing counsel generally are not favored." Id.

As the Mitnick Firm noted, the pertinent Rule of Professional Conduct raised in the motion is RPC 1.9 addressing duties to former clients. Here, it is Pennsylvania's RPC 1.9 that applies. In pertinent part, it states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person ***in the same or a substantially related matter*** in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.
>
> \*\*\*
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>     (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>     (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

(Emphasis added).

There is no dispute that the Mitnick Firm is a "former client" triggering the application of RPC 1.9(a). The parties dispute whether the current representation of Balanced Bridge is "substantially related" to the prior representation of the Mitnick Firm as to its arrangement with the Locks Firm and counseling the Mitnick Firm about its claim to common benefit fees in the NFL Concussion Class Action.

7

A "substantially related matter" is one that involves "the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." RPC 1.9, Cmt. 3. As an example of a "substantially related matter," the Explanatory Comment notes the representation of a businessperson's spouse in a divorce proceeding when the prior representation of the businessperson involved learning "extensive private financial information" about that former client. Id. As another example, the Explanatory Comment notes that a lawyer who represented a client in securing environmental permits to build a shopping center could not represent neighbors opposing the rezoning of the property for that purposes. However, that same lawyer could represent a tenant of the same shopping center in a rent dispute with the prior client. Id. Importantly, the moving party bears the burden of establishing a "substantial relationship" under Rule 1.9. Com. Ins. Co. v. Graphix Hot Line, Inc., 808 F.Supp. 1200, 1204 (E.D. Pa. 1992) (citation omitted).

The case law also serves to distinguish the case at hand from representations prohibited by Rule 1.9. In Graphix, the same attorney represented an insurer for a coverage opinion on an insured tenant's claim for damage sustained in a building fire, and then represented another insurer in a subrogation action against another tenant of the same building for claims arising from the same fire. The Eastern District of Pennsylvania in Graphix noted a three-question test for determining whether two representations are "substantially related" under Rule 1.9:

    1. What is the nature and scope of the prior representation at issue?

    2. What is the nature of the present lawsuit against the former client?

    3. In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?

Id. at 1204 (citations omitted).

In Graphix, the two representations were not "substantially related," because the first representation was simply a coverage opinion, and did not involve an analysis of the fire's origin, whereas the cause of the fire was the core issue of the second representation. The court also noted that information pertaining to the cause of the fire would not have been relevant to the first representation, and was thus not likely to have been disclosed. Id. at 1205.

Fox Rothschild's current representation of Balanced Bridge is not "substantially related" to its prior work for the Mitnick Firm, and therefore is not prohibited by RPC 1.9. Considering the questions noted in Graphix, the only issue in the current arbitration is whether the Mitnick Firm received proceeds from the NFL Concussion Class Action and failed to remit those funds to Balanced Bridge. More narrowly, because it is undisputed that the Mitnick Firm partially paid Balanced Bridge with the proceeds of its portion of the common benefit attorneys' fees, the only question is whether the Mitnick Firm received proceeds from its representation of individual claimants in the NFL Concussion Class Action. If the Mitnick Firm received such proceeds, it owes them to Balanced Bridge. If it did not receive any such proceeds, then there is nothing owed.

Mr. Mitnick's own statements to Balanced Bridge about the receipt of such proceeds and the expectation that others would soon be received—as well as the fact that so much time has passed without any payment from the Mitnick Firm, which represents hundreds of claimants in the NFL Concussion Class Action—support Balanced Bridge's claim, not any confidential information in Fox Rothschild's possession. This motion is yet another tact for the Mitnick Firm to avoid facing its clear obligations, while dissipating the proceeds it previously sold to Balanced Bridge in exchange for millions in advanced payments. Fox Rothschild had no involvement with

9

the Mitnick Firm's receipt of proceeds from the NFL Concussion Class Action. Fox Rothschild's representation with respect to the Mitnick Firm's arrangements with the Locks Firm and its claim for common benefit fees are not substantially related to the questions in this arbitration. The issues in this arbitration are solely the Mitnick Firm's receipt of funds with respect to individual clients (following the conclusion of Fox Rothschild's representation) that it did not turn over to Balanced Bridge as promised.

The Mitnick Firm disclosed no confidences to Fox Rothschild during the prior representation that would be relevant to the present action. The terms of the Mitnick Firm's fee splitting arrangement with the Locks Firm have no bearing on whether the Mitnick Firm breached its duties to Balanced Bridge. Likewise, the Mitnick Firm paid the proceeds it received from the common benefit fees to Balanced Bridge, so those proceeds are not at issue here.

Perhaps anticipating this issue, the Mitnick Firm's motion asserts that Fox Rothschild generally represented the Mitnick Firm, and that Mr. Mitnick showed unspecified hard copies of various documents to Mr. Buckley during the representation—although none of those documents are identified or even described in any detail. In contrast with the Mitnick Firm's generalized and supported allegations, the engagement letter and time entries evidence the limited scope of the prior representation. Nothing that one would expect a client to show its counsel in the prior representation would bear on the current dispute.

To this point, nowhere in the motion or the Certification of Craig R. Mitnick, Esquire, does the Mitnick Firm specify the nature of the documents supposedly shown to Mr. Buckley, much less explain how they have any bearing on the current dispute. The Mitnick Firm hollowly asserts (notably, only in its brief and not in Mr. Mitnick's Certification) that the Mitnick Firm "*may*" have given Fox Rothschild unspecified NFL client lists that it "*may*" not have also

provided to Balanced Bridge and that, assuming this actually occurred, it "*may*" have any material connection to Balanced Bridge's claims against the Mitnick Firm under its funding arrangement *[Mitnick brief at 13]*.

Again, the only issues in this litigation are the Mitnick Firm's receipt of proceeds from the NFL Concussion Class Action, and its failure to remit those proceeds to Balanced Bridge. Even taking the Mitnick Firm's unsupported suggestions about potential disclosure of potential client lists as true, the identities of the Mitnick Firm's clients in the NFL Concussion Class Action are not at issue here. Even if they were, such client identities would be disclosed to Balanced Bridge in due diligence for a funding transaction, and also in discovery in this dispute. The Mitnick Firm's obfuscation on this issue is nothing more than another pretense to interfere with Balanced Bridge's choice of counsel and further delay its obligations under the funding arrangement.

Finally, in engaging Fox Rothschild, the Mitnick Firm agreed that Fox Rothschild could represent future clients in unrelated matters adverse to the Mitnick Firm, even if the Mitnick Firm had remained a current client. The present dispute is not substantially related to Fox Rothschild's limited prior representation of the Mitnick Firm, is not prohibited by RPC 1.9, and is permitted under the terms of engagement. Still, as indicated in the Mitnick Firm's filing, Fox Rothschild offered to screen Mr. Reich and Mr. Buckley from this matter even though they have no information from their prior work that would have any bearing on the present dispute. The Mitnick Firm's rejection of this offer and the present motion are consistent with its continuing efforts to delay and avoid its obligations to Balanced Bridge. Those efforts lack basis and should be rejected.

## III. Conclusion

The Mitnick Firm plainly seeks to disqualify Fox Rothschild to delay a reckoning with its obligations to Balanced Bridge, a purpose plainly forbidden under the Preamble to the Pennsylvania Rules of Professional Conduct. Fox Rothschild's former representation of the Mitnick Firm is not substantially related to the current dispute and does not present a conflict of interest under RPC 1.9. Fox Rothschild has no confidential information of the Mitnick Firm that has any bearing on the Mitnick Firm's payment obligations to Balanced Bridge. The motion to disqualify should be denied for those reasons and because it is purportedly supported by a certification that includes false statements. Balanced Bridge allowed to proceed with its counsel of choice and without further delay or prejudice to its position.

Respectfully submitted,

*Eric E. Reed*

Fox Rothschild LLP
Eric E. Reed, Esq.
2000 Market Street, 20th Floor
Philadelphia, PA 19103
(215) 299-2000
ereed@foxrothschild.com

Date: September 18, 2020

Counsel for Claimant, Balanced Bridge Funding LLC fka Thrivest Specialty Funding LLC